1
2
3
4
5
6
7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11    KEVIN SIMMONS,                    Case No.  2:16-cv-02858-R-KES

12              Plaintiff,

13         v.                           AMENDED REPORT AND
                                        RECOMMENDATION OF U.S.
14    G. ARNETT, et al.,                MAGISTRATE JUDGE

15              Defendants.

16

17

18         This Amended Report and Recommendation ("R&R") is submitted to the

19    Honorable Manuel L. Real, United States District Judge, pursuant to the provisions

20    of 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for

21    the Central District of California.[1]

22

23

24    _____

25         [1] Plaintiff filed this action pro se in April 2016.  (Dkt. 1.)  The case was
      initially assigned to the Magistrate Judge for pre-trial matters pursuant to General
26    Order 05-07.  (Dkt. 4.)  After Plaintiff obtained pro bono counsel, the District Judge
      vacated the earlier, general reference but referred Defendants' pending summary
27    judgment motion to the Magistrate Judge for an R&R.  (Dkt. 136, 138.)
28

1

# I.

## INTRODUCTION

Kevin Simmons ("Plaintiff"), a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), brings this civil rights action under 42 U.S.C. § 1983.  The action arises out of a November 28, 2013 incident at the California State Prison, Los Angeles County ("LAC") in which Correctional Officer ("CO") Arnett shot Plaintiff three times with sponge bullets. Plaintiff was engaged in an altercation with another inmate, Murillo, which Plaintiff characterizes as an unprovoked attack.  During this altercation, Plaintiff's leg was broken so badly that he required surgery to place a metal rod in his leg.

The operative Second Amended Complaint ("SAC" at Dkt. 94) claims that: (1) CO Arnett used excessive force when he shot Plaintiff with the sponge bullets; (2) CO Arnett failed to protect Plaintiff from Murillo; (3) Sergeant Romo had other officers drag Plaintiff around after he was shot, even though his leg was visibly broken; and (4) Nurse Lopez falsified a report about the incident, purposefully failing to document Plaintiff's injuries accurately.

Defendants move for summary judgment on the grounds that Plaintiff failed to exhaust his administrative remedies and that his claims are untimely.  (See Dkt. 117 ["Motion"]; Dkt. 140 ["Opp'n"]; Dkt. 147 ["Reply"].)  The Magistrate Judge heard argument on the motion on January 8, 2019.  (Dkt. 152.)

As discussed further below, Defendants' motion for summary judgment should be granted in part and denied in part.  Plaintiff's failure-to-protect claim against CO Arnett is unexhausted.  Plaintiff's deliberate indifference claim against Nurse Lopez is exhausted because Plaintiff filed a grievance stating that she purposefully failed to document properly his injuries resulting from the incident.

This Amended R&R addresses Defendants' objections (Dkt. 157) to the initial R&R (Dkt. 155) and Plaintiff's corrected response to those objections (Dkt. 159-1).

## II.

## LEGAL STANDARDS

**A.    Standard for Exhaustion of Administrative Remedies.**

**1.    General Requirements and Purpose.**

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust administrative remedies before filing suit in federal court.  42 U.S.C. § 1997(e).

Exhaustion of administrative remedies serves two main purposes.  First, exhaustion protects administrative agency authority, giving agencies an opportunity to correct their own mistakes.  Woodford v. Ngo, 548 U.S. 81, 89 (2006).  Second, exhaustion promotes efficiency, because claims generally can be resolved more economically and quickly before an agency than a federal court.  Id.  "Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims."  Id. at 90.

To exhaust claims under the PLRA, a prisoner generally must "us[e] all the steps that the agency holds out, and do[] so *properly* (so that the agency addresses the issues on the merits)."  Id. (citation omitted).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  Id. at 90-91.

**2.    CDCR's Administrative Exhaustion Procedures.**

California law gives state prisoners the right to appeal administratively any CDCR decision, action, condition, or policy that they can demonstrate had an adverse effect on their welfare.  Cal. Code Regs. tit. 15, § 3084.1(a).  An inmate must complete three steps to exhaust his administrative remedies.  First, he must submit an Inmate/Parolee Appeal form (a "CDCR 602") to the appeals coordinator of the prison where his claims arose.  If the inmate does not receive adequate relief

3

at the first level, he must submit a second-level appeal.  If the inmate does not receive adequate relief at the second level, he must submit a third-level appeal to the Office of Appeals in Sacramento.  The third level of review exhausts administrative remedies.  Id., §§ 3084.2(a)-(d), 3084.7.

In addition to being granted or denied on the merits, if an appeal is procedurally defective, it may be rejected with "clear and sufficient instructions" on how to fix the appeal, or cancelled entirely.  Id., § 3084.6.  A prisoner must appeal a cancellation to exhaust administrative remedies.  Id., §§ 3084.1(b), 3084.6(e).

At the summary judgment hearing, the parties disagreed about how much information Plaintiff was required to allege in his administrative grievances. Plaintiff relied on Griffin v. Arpaio, 557 F.3d 1117 (9th Cir. 2009) and Sapp v. Kimbrell, 623 F.3d 813 (9th Cir. 2010) to argue that a grievance need only state the name of the person at whom it is aimed and the facts giving rise to the claim to accomplish exhaustion.  Defendants argued that Griffin and Sapp apply only where the relevant administrative regulations are silent on the level of specificity required, and they do not apply here because CDCR regulations were subsequently amended to require additional specificity.

In Jones v. Bock, 549 U.S. 199 (2007), the Supreme Court held that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion," and the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim."  Id. at 218.  In Griffin, the Ninth Circuit held that "when a prison's grievance procedures are silent or incomplete as to factual specificity, 'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'"  557 F.3d at 1120 (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)).  Under this standard, a grievance "need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved," and it "need not contain every fact necessary to prove each element of an eventual legal claim."  Id.

1    <u>Griffin</u> applied this standard to grievances submitted at an Arizona jail, because the

2    jail's procedures "merely instruct[ed] the grievant to '[b]riefly describe [the]

3    complaint and a proposed resolution.'"  <u>Id.</u>  Later, <u>Sapp</u> applied this standard to

4    CDCR regulations, which at that time "require[d] only that an inmate 'describe the

5    problem and the action requested.'"  623 F.3d at 824 (quoting Cal. Code Regs. tit.

6    15, § 3084.2(a) (2009)).

7         CDCR regulations were amended following <u>Sapp</u>, however.  Courts have

8    noted that the amended regulations, which require more specificity, supersede the

9    standard set forth in <u>Griffin</u> and <u>Sapp</u>.  <u>See</u>, <u>e.g.</u>, <u>Martinez v. Muniz</u>, No. 14-03753,

10   2016 U.S. Dist. LEXIS 76006 at *30, 2016 WL 3208398 at *10 (N.D. Cal. June 10,

11   2016) ("Plaintiff cites to <u>Sapp</u> … and argues that the PLRA does not require a

12   prisoner to specifically name all responsible parties in his grievance where the

13   prison's own regulations do not require it.  However, California amended its

14   regulations in 2011 and now requires that to grieve an issue against an individual,

15   the inmate must 'list all staff member(s) involved and [ ] describe their involvement

16   in the issue.'"); <u>Avery v. Paramo</u>, No. 13-2261, 2015 U.S. Dist. LEXIS 109127 at

17   *25 n.9, 2015 WL 4923820 at *9 n.9 (S.D. Cal. Aug. 18, 2015) (same).

18        Thus, the governing standard is that set forth in CDCR's administrative

19   regulations.  In 2013, when Plaintiff was submitting the grievances at issue, the

20   regulations required the prisoner to: (1) "describe the specific issue under appeal

21   and the relief requested"; (2) "list all staff member(s) involved and … describe their

22   involvement in the issue"; (3) "include the staff member's last name, first initial,

23   title or position, if known, and the dates of the staff member's involvement in the

24   issue"; (4) "state all facts known and available to him/her regarding the issue being

25   appealed at the time of submitting the" CDCR 602; and (5) "obtain and attach all

26   supporting documents … necessary for the clarification and/or resolution of his or

27   her appeal."  Cal. Code Regs., tit. 15 §§ 3084.2(a)(3)-(4), 3084.3(a) (2013).

28

**B.**     **Summary Judgment Standard.**

"[I]n those rare cases where a failure to exhaust is clear from the face of the complaint, a defendant may successfully move to dismiss under Rule 12(b)(6) for failure to state a claim." Albino v. Baca, 747 F.3d 1162, 1169 (9th Cir. 2014). "In a typical PLRA case," however, "a defendant will have to present probative evidence … that a prisoner has failed to exhaust available administrative remedies under § 1997e(a)," and may do so in a motion for summary judgment under Rule 56. Id.

On a summary judgment motion based on lack of exhaustion, "the defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino, 747 F.3d at 1172. "Once the defendant has carried that burden, … the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. However, "the ultimate burden of proof remains with the defendant." Id.

In deciding a motion for summary judgment, the court "must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial." MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 516 (9th Cir. 1993). If there is a factual dispute, the Court must accept the non-movant's version of what occurred and must draw all reasonable inferences in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. An issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. Id. at 250-51. "The

1  mere existence of a scintilla of evidence in support of the [non-movant's] position

2  will be insufficient; there must be evidence on which the jury … could find by a

3  preponderance of the evidence that the [non-movant] is entitled to a verdict …." Id.

4  at 252.[2]

5      A successful summary judgment motion based on lack of exhaustion results

6  in a judgment entered without prejudice.  See Lira v. Herrera, 427 F.3d 1164, 1170

7  (9th Cir. 2005) ("a district court must dismiss a case without prejudice when there

8  is no presuit exhaustion") (citation and quotation marks omitted); see, e.g.,

9  Mendoza v. Aguilar, 746 F. App'x 609 (9th Cir. 2018) ("Because we affirm the

10  district court's summary judgment on the basis of Mendoza's failure to exhaust

11  administrative remedies, we treat the judgment as being entered without

12  prejudice.").

13                                          **III.**

14                             **EVIDENTIARY RECORD**

15  **A.**      **Evidence Submitted by the Parties.**

16      Defendants have filed declarations from the following individuals: S. Gates,

17  chief of the division that oversees health care appeals for the CDCR (Dkt. 117-3);

18  M. Fordham, the appeals coordinator at LAC (Dkt. 117-6); M. Voong, Chief of the

19  CDCR Office of Appeals in Sacramento (Dkt. 117-9); Cassandra Shryock,

20  Defendants' counsel, whose declaration authenticates portions of Plaintiff's

21

22          [2] If a summary judgment regarding exhaustion is inappropriate due to

23  disputes of material fact, disputed factual questions relevant to exhaustion are

24  decided by the judge rather than a jury.  See Albino, 747 F.3d at 1168, 1173-74
    (noting that "[i]f summary judgment is not appropriate, the district judge may

25  decide disputed questions of fact in a preliminary proceeding"; distinguishing

26  Albino, which was reviewing grant of summary judgment on exhaustion issue,
    from Morton v. Hall, 599 F.3d 942 (9th Cir. 2010), in which the district court

27  "conducted an evidentiary hearing on the question whether Morton, a prisoner, had
    exhausted his administrative remedies").

28

1   deposition (taken in September 2017) and the criminal judgment under which

2   Plaintiff is incarcerated (Dkt. 117-12); and Lieutenant Mijares, an LAC official who

3   interviewed Plaintiff in connection with one of his grievances (Dkt. 147-2).

4        Additionally, the Court asked Defendants to file copies of all grievances filed

5   by Plaintiff between November 28, 2013 (the day of the incident) and April 22,

6   2016 (the filing of the initial complaint), rather than simply stating that some of the

7   grievances were not relevant.  (Dkt. 122.)  Defendants filed supplemental

8   declarations from Voong and Fordham regarding these grievances.  (Dkt. 133.)

9        The operative complaint was verified under penalty of perjury.  (SAC at 15.)[3]

10  See Moran v. Selig, 447 F.3d 748, 759 n.16 (9th Cir. 2006) (holding that a "verified

11  complaint may serve as an affidavit for purposes of summary judgment if it is based

12  on personal knowledge and if it sets forth the requisite facts with specificity").   In

13  opposing summary judgment, Plaintiff filed a declaration from himself (Dkt. 140-2)

14  and from his counsel (Dkt. 140-7).  The declaration from Plaintiff's counsel

15  authenticates additional portions of Plaintiff's deposition (supplementing the

16  portions submitted by Defendants) and documents obtained from Defendants in

17  discovery.

18  **B.**   **Objections to the Evidence.**

19       In moving for or opposing a summary judgment motion, "A party may object

20  that the material cited to support or dispute a fact cannot be presented in a form that

21  would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  Both parties have filed

22  objections to the other party's evidence.

23       Plaintiff's objections (Dkt. 144, 145, 146) are OVERRULED.  Defendants'

24  declarations sufficiently explain the basis of the declarants' personal knowledge.

25  To the extent Plaintiff objects that documents relating to his grievance history are

26

27  _____
        [3] All page citations in this R&R refer to the pagination imposed by the
28  Court's electronic filing system, CM/ECF.

hearsay, these documents are admissible as business records.  <u>See</u> Fed. R. Evid. 803(6).  To the extent Defendants' declarations opine about what is legally required for exhaustion or summarize the content of Plaintiff's grievances (which are in the record), these opinions and summaries are neither binding nor persuasive to the Court.

Defendants' objections (Dkt. 150) are likewise OVERRULED.  Plaintiff's description of the incident and the exhibits attached to Plaintiff's counsel's declaration are relevant because they provide background information helpful to understanding the allegations in the operative complaint and Plaintiff's grievances.

Defendants' motion to strike Plaintiff's objections as untimely (Dkt. 148) is DENIED.

**C.**   **Grievances Filed by Plaintiff about the November 2013 Incident.**

### 1.   First CDCR 602

On December 25, 2013, Plaintiff submitted CDCR 602 no. LAC-C-14-00023.  (Voong Decl. Ex. E.)  First-level review was bypassed, and after an investigation, relief was denied at the second level on March 20, 2014.  On March 25, 2014, Plaintiff sought third-level review, and relief was denied on October 17, 2014.  (<u>Id.</u>)

### 2.   Second CDCR 602

Plaintiff states that he submitted a second CDCR 602 a day after the First CDCR 602, on December 26, 2013.  (Simmons Decl. ¶ 8.)  Plaintiff has submitted a copy of this CDCR 602, which alleges (in relevant part) that Nurse Lopez falsified her medical report and did not report gunshot wounds to his left leg, right buttock, and thigh.  (Simmons Decl. Ex. 2.)  This CDCR 602 was not logged by the prison; Plaintiff states, "I don't know what happened to the Second CDCR 602 I filed that was never logged."  (Simmons Decl. ¶ 8.)

### 3.   Third CDCR 602

On December 31, 2013, Plaintiff submitted CDCR 602 no. LAC-C-14-

00400.  (Fordham Decl. Ex. C.)  This CDCR 602 alleged that Lieutenant Marshall—who conducted a disciplinary hearing against Plaintiff based on the fight with Murillo—denied Plaintiff a fair hearing because he "withheld … statements [Plaintiff] made to him [about the incident] from the report" about the hearing. (Id.)  Plaintiff alleged that this "show[ed] that [Marshall was] also a part of covering up the facts" about the shooting.  (Id.)

First-level review was bypassed.  On March 3, 2014, Plaintiff was interviewed by Lieutenant Mijares about this CDCR 602.  Plaintiff then withdrew the appeal rather than pursuing it through second- and third-level review. There is a dispute of fact as to why Plaintiff did so.[4]  This dispute is not material because, as discussed further below, the First CDCR 602 is sufficient to exhaust most of Plaintiff's claims, and the Second CDCR 602 would not exhaust the remaining claims even if Plaintiff had pursued it through third-level review.

### 4.    Fourth CDCR 602

On March 12, 2014, Plaintiff submitted CDCR 602 no. LAC-C-14-02347. (Simmons Decl. Ex. 4.)  He again complained about the actions of Lieutenant Marshall at the disciplinary hearing and stated that the CDCR 602 was being "refiled/resubmitted, because I was manipulated."  (Id.)  This grievance was screened out as untimely.  (Udenka Decl. Ex. 10; Supp. Fordham Decl. Ex. N; see also Reply at 4.)

### IV.

### DISCUSSION

Defendants admit that the excessive force claim against CO Arnett is exhausted.  (Mot. at 1-2.)  Plaintiff, in turn, admits that the claim against Sergeant

---

[4] Plaintiff asserts that Lieutenant Mijares advised him to withdraw it (Simmons Decl. ¶¶ 10, 11), but Lieutenant Mijares denies this (Mijares Decl. ¶¶ 4-6).

Romo was not properly exhausted and therefore does not oppose summary judgment as to Sergeant Romo.  (Opp'n at 6 n.2.)  Thus, the only claims currently in dispute are the failure-to-protect claim against CO Arnett and the deliberate indifference claim against Nurse Lopez.

## A.   The Failure-to-Protect Claim against CO Arnett is Not Exhausted.

### 1.   Nature of the Claim.

The SAC states that Plaintiff, an African-American inmate, "was approached by a Mexican inmate named Murillo" who was "twice the Plaintiff[']s size."  (SAC at 4.)  CO Arnett "watched Inmate Murillo travel from one side of the building while [Murillo's] nose and face was bleeding" and "sucker-punch[] the Plaintiff in the side of his head…."  (SAC at 4-5.)

Plaintiff testified at his deposition that, just prior to Murillo's sucker-punch, Plaintiff observed Murillo being punched and slapped by other inmates as part of a Hispanic gang initiation ritual, and he heard CO Arnett tell them to stop "horseplaying."  (Udenka Decl. Ex. 5, Simmons Dep. at 60-64, 67-68.)  Plaintiff testified that, because Murillo was not beaten badly, he knew that Murillo would likely be required to beat up an African-American inmate to complete his initiation. (Udenka Decl. Ex. 5, Simmons Dep. at 66-67.)[5]

The SAC states that, "at the same time [as the first punch], [CO] Arnett fired his first shot hitting the Plaintiff in his leg," which broke Plaintiff's leg and "knocked [him] to his knees."  (SAC at 4.)  "Inmate Murillo continue[d] to punch Plaintiff in the side of the face and head," and it was "clear that the Plaintiff [was] being victimized by Inmate Murillo."  (SAC at 4.)  Murillo's "Mexican buddies [were] chanting on the ground floor, throw his [a]ss off the tier!"  (SAC at 4.)  CO

---

[5] Defendants object to this evidence as irrelevant to exhaustion and timeliness (Dkt. 147-1 at 29-37), an objection that has been overruled.  However, nothing in this order prevents Defendants from later attempting to refute this evidence at trial or in connection with a later summary judgment motion.

11

Arnett then fired a second and third round at Plaintiff, while Plaintiff was still "on his knees attempting to cover his face and head from the punches of Murillo…." (SAC at 4-6.)

The SAC argues that CO Arnett violated his duty "to protect the Plaintiff from being assaulted by other inmates." (SAC at 5.) "[I]nstead of taking actions to protect the Plaintiff from the repeated[] punches of assault," the SAC argues, "[CO] Arnett reloaded his 40mm launcher and maliciously and sadistically us[ed] excessive force by aiming and firing at the Plaintiff [a] second time when the Plaintiff was clearly the victim." (SAC at 5-6.) The SAC complains that CO Arnett chose to shoot Plaintiff rather than Murillo, even though Murillo was the aggressor. (SAC at 6.)

Although the claim against CO Arnett is entitled "Eighth Amendment Claim of Excessive Force" (SAC at 4), the Court nevertheless construed the SAC as also bringing a claim based on a failure to protect Plaintiff from the risk of substantial harm posed by Murrillo. (See, e.g., Dkt. 102 at 2 [minute order ruling on discovery dispute]; see also Dkt. 95 at 3 [CO Arnett's answer, denying that Arnett "failed to protect Plaintiff from 'the repeatedly [sic] punches of assault'"].)[6]

---

[6] Although both excessive force and failure-to-protect claims are governed by the Eighth Amendment, different legal standards apply. Compare Hudson v. McMillian, 503 U.S. 1, 6 (1992) ("[A]pplication of the deliberate indifference standard is inappropriate when authorities use force to put down a prison disturbance. Instead, the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.") (citation and quotation marks omitted); with Farmer v. Brennan, 511 U.S. 825, 835 (1994) (noting that Hudson's "standard of purposeful or knowing conduct is not … necessary to satisfy the mens rea requirement of deliberate indifference for claims challenging conditions of confinement," and applying the deliberate indifference standard to a claim based on failure to protect the plaintiff from attacks by other inmates).

2.     **The First CDCR 602 Failed to Exhaust Plaintiff's Failure-to-Protect Claim.**

Plaintiff contends that this failure-to-protect claim was exhausted in his First CDCR 602, which he pursued through the third and final level of review.  (Opp'n at 14-15.)  This grievance alleged that Plaintiff was "involved in defending [him]self from being attacked by another inmate" and was "racially profil[ed]" by CO Arnett, who "specifically … aimed and shot" him, breaking his leg.  (Voong Decl. Ex. E.)  Plaintiff alleged that his injuries were the result of CO Arnett's "negligence and excessive force."  (Id.)  Plaintiff alleged, "CO Arnett further admits in his own written report that such fight was a mutual fight without neither inmate [sic] being the aggressor over the other.  CCR, Title 15, #3268(a)(3) was clearly violated under CDCR use of force policy…."  (Id.)  See Cal. Code Regs, tit. 15 § 3268(a)(3) (defining "excessive force" as "the use of more force than is objectively reasonable to accomplish a lawful purpose").

These allegations are insufficient to exhaust Plaintiff's claim that CO Arnett failed to protect Plaintiff from an attack by Murillo.  Plaintiff did not mention key facts "known and available to him … regarding the issue," Cal. Code Regs., tit. 15 § 3084.2(a)(4), i.e., that CO Arnett witnessed Murillo being initiated into a Hispanic gang and then walk toward Plaintiff, an African-American.  It is based on these facts that Plaintiff contends CO Arnett should have known about the danger Murillo posed to Plaintiff.  (See Reply at 2-3 [arguing that the "nature of the wrong is distinct for Plaintiff's excessive force and failure-to-protect claims: one claim is based on the alleged excessive use of force to quell a physical incident, while the other is based on the alleged failure to stop a fight—where the officer knew there was a substantial risk that the fight would occur—before it occurred"].)

3.     **The Second, Third, and Fourth CDCR 602s do not exhaust this claim.**

Plaintiff briefly asserts, in the alternative, that his failure-to-protect claim was

1  exhausted in his subsequent CDCR 602s.  (Opp'n at 22.)  Yet these later grievances

2  include even less detail about what CO Arnett knew and did prior to the fight than

3  the First CDCR 602.

4      The second, unlogged CDCR 602 states that Plaintiff "was the victim of a

5  very violent incident by CO Arnett and Inmate Murillo" and describes his injuries

6  from being shot three times.  (Simmons Decl. Ex. 2.)  It then goes on to complain

7  about the actions of Sergeant Romo and Nurse Lopez after the shooting.  (Id.)  The

8  Third and Fourth CDCR 602s mainly complain about the actions of Lieutenant

9  Marshall at the disciplinary hearing about the incident.  (Fordham Decl. Ex. C.)

10 They only mention CO Arnett insofar as they allege that Lieutenant Marshall

11 attempted to "cover up" statements Plaintiff made at the hearing, statements to the

12 effect that he was shot three times by CO Arnett, that he was "victimized" by CO

13 Arnett and Murillo, that he suffered serious injuries, and that staff tried to cover up

14 facts about the shooting.

15     Even if all of these CDCR 602s were logged and pursued through the final

16 level of administrative review, none of them were sufficient to exhaust the failure-

17 to-protect claim against CO Arnett.

18 **B.    The Deliberate Indifference Claim against Nurse Lopez is Exhausted.**

19     **1.    Nature of the Claim**

20     The cause of action against Nurse Lopez is entitled "inadequate medical

21 care" and "deliberate indifference."  (SAC at 8.)  The SAC states that CO Arnett's

22 "first shot broke Plaintiff's tibia and fibula completely in half causing Plaintiff's

23 left leg to flop/fold into two pieces."  (SAC at 8-9.)  Nurse Lopez arrived at the

24 scene and completed a Medical Report of Injury or Unusual Occurrence, CDCR

25 7219 form about the incident.  (SAC at 8-10; Dkt. 1 at 13 [the 7219 form, attached

26 as an exhibit to Plaintiff's initial complaint].)

27     When Nurse Lopez asked Plaintiff "what happened to cause the injury …

28 Plaintiff responded, 'No comment.'"  (SAC at 9.)  After Plaintiff explained that his

pants were wet because he "sat in the water by the shower," Sergeant Romo "instructed Nurse Lopez to change the Plaintiff's statement from 'no comment' to 'I hurt my leg when I slipped in water'" on the CDCR 7219 form.  (SAC at 9.)  She did so.  (SAC at 9; Dkt. 1 at 13.)

Although Plaintiff states he "informed Sgt. Romo and Nurse Lopez that he was shot on his back side," Nurse Lopez only had Plaintiff's "jacket and shirt removed" and not, it appears, his pants.  (SAC at 9; see also id. [alleging that Sergeant Romo told Nurse Lopez that she "was wasting her time and that the Plaintiff wasn't shot"].)  Nurse Lopez "failed to treat Plaintiff for gunshot wounds to his right thigh and buttock which [were] bleeding."  (SAC at 9.)  She also "falsified the 7219 medical form by saying that the Plaintiff had no injuries on his back side" and by "circl[ing] number 11 pain in lower left leg instead of number 3 broken bones."  (SAC at 9; see also Dkt. 1 at 13.)

Plaintiff was admitted to Palmdale Regional Hospital the same day and ultimately had surgery to place a rod in his leg.  (SAC at 9.)  On December 1, 2013, several days after his admission, "while being treated by the Palmdale skin assessment," Plaintiff states that "the medical staff had to pry the Plaintiff's underwear and athletic shorts off of his bloody thigh and buttock," which lasted "approximately (3) hours" and caused Plaintiff "extreme pain and suffering."  (SAC at 9-10.)  Plaintiff contends that "the refusal by Nurse Lopez to treat Plaintiff's wounds caused him unnecessary and wanton infliction of pain."  (SAC at 10.)

## 2.    The First CDCR 602 exhausted the deliberate indifference claim against Nurse Lopez.

Plaintiff's First CDCR 602 alleged in relevant part:

Upon me being seen by medical staff I clearly informed Nurse M. Lopez that I had *no* comments to make about the incident!  However, once [N]urse Lopez realized that Officer Arnett had actually shot me and broke[n] my left leg by using excessive force, she immediately

1    went back and *falsified* my #7219 Medical Injury Report by *falsely*

2    writing that I had slipped and fell [sic] into some water and hurt my

3    own leg.  Nurse Lopez also neglected to identify on my #7219 Injury

4    Report that I had suffered a broken bone.  Nevertheless, CO Arnett

5    clearly admits in his own written report that he specifically aimed and

6    shot my left leg three times which resulted [in] it being broke[n] in

7    half and requiring *emergency* reconstructive surgery with metal rods

8    to hold the bone back together.…

9    (Voong Decl. Ex. E) (emphasis in original).  Thus, the First CDCR 602 alleged that

10   Nurse Lopez falsified the CDCR 7219 form by failing to note that he had a broken

11   leg and regarding the cause of the broken leg.  It did not allege that Plaintiff was

12   shot in the buttocks, or that Nurse Lopez failed to note or treat this injury.

13   Defendants argue that this CDCR 602 is insufficient to exhaust Plaintiff's

14   current deliberate indifference claim against Nurse Lopez because it "never states

15   that Lopez failed to treat his 'gunshot wounds,' the basis of his current deliberate

16   indifference claim. … Instead, he only complained that she did not accurately

17   complete a form, which … does not state a deliberate indifference claim."  (Mot. at

18   17.)  Plaintiff responds that Defendants are construing his claim against Nurse

19   Lopez too narrowly.  He argues that the basis of the claim is not that Nurse Lopez

20   "failed to treat his 'gunshot wounds,'" but instead that she knew of and consciously

21   disregarded a serious risk of harm to his health by falsifying the Medical Report of

22   Injury and failing to examine and treat his injuries."  (Opp'n at 24.)  Defendants

23   reply that "falsifying the form that documented Plaintiff's injuries for *custody* staff

24   is not alleged to have, and could not have, caused Plaintiff any injury, and thus

25   cannot support a deliberate-indifference claim."  (Reply at 7.)

26   The First CDCR 602 was sufficient to exhaust the deliberate indifference

27   claim against Nurse Lopez, which alleges that she purposefully ignored and

28   inaccurately documented the injuries he sustained in the November 28, 2013

1   incident.  Essentially, the grievance alleged that Plaintiff was shot, and Nurse Lopez

2   attempted to conceal the fact that he was shot, thereby demonstrating deliberate

3   indifference towards his serious injuries caused by the shooting.   Plaintiff's failure

4   to mention all of the shooting-related injuries Nurse Lopez allegedly concealed

5   does not render the grievance insufficient.  See, e.g., Jaimes v. Barnes, No. 14-

6   00952, 2016 U.S. Dist. LEXIS 82050 at *25, 2016 WL 3448098, at *8 (E.D. Cal.

7   June 23, 2016) ("Plaintiff's grievance is sufficient to place prison officials on notice

8   of his claim that he was deliberately mistreated by Dr. Barnes on April 6, 2012, and

9   the fact that Plaintiff has added additional factual allegations in the operative

10   complaint does not negate such prior notice"), R&R adopted, 2016 WL 4127086

11   (E.D. Cal. Aug. 2, 2016).

12       The Court disagrees with Defendants' argument that Nurse Lopez's alleged

13   failure to treat Plaintiff's gunshot wounds is a "wholly different and distinct wrong"

14   from "inaccurately documenting Plaintiff's injuries," such that Plaintiff's deliberate

15   indifference claim against Nurse Lopez is only partially exhausted.  (Dkt. 157 at 1-

16   2, 5.)  Defendants cite Griffin for the proposition that a grievance must alert prison

17   officials to "the nature of the wrong."  (Id. at 3, citing Griffin, 557 F.3d at 1120.)

18       Griffin further explained, "A grievance … need not contain every fact

19   necessary to prove each element of an eventual legal claim.  The primary purpose

20   of a grievance is to *alert the prison to a problem and facilitate its resolution*, not to

21   lay groundwork for litigation." 557 F.3d at 1120 (emphasis added).  In Griffin, for

22   example, the grievance at issue requested a ladder for reaching a top bunk, and the

23   prison dismissed the grievance after the prisoner was issued a lower bunk

24   assignment.  Id. at 1118-19.  The prisoner's complaint later alleged that this lower

25   bunk assignment was being disregarded.  Id. at 1121.  The Ninth Circuit found that

26   the prisoner had failed to exhaust properly because:

27       He did not provide notice of the prison staff's alleged disregard of his

28       lower bunk assignments.  The officials responding to his grievance

17

1   reasonably concluded that the nurse's order for a lower bunk

2   assignment solved Griffin's problem.  Rather than clarifying the

3   situation, Griffin repeatedly demanded a ladder. His grievance did not

4   "provide enough information ... to allow prison officials to take

5   appropriate responsive measures."

6   Griffin, 557 F.3d at 1121 (citation omitted).

7   　　　Similarly, in another case cited by Defendants, Beauchamp v. Delatorre, No.

8   13-2098, 2014 WL 12778296 (N.D. Cal. Dec. 16, 2014), aff'd sub nom.

9   Beauchamp v. Doglietto, 698 F. App'x 396 (9th Cir. 2017), the plaintiff's grievance

10  alleged that he had "not been seen by a medical specialist or been given his pain

11  medication," but the grievance failed to mention that defendants "told [plaintiff]

12  that if [he] sought medical treatment he would be placed 'in the hole[.]'"  2014 WL

13  12778296 at *5.  Because of the failure to include this information, the court

14  concluded that the grievance "did not include sufficient information 'to allow

15  prison officials to take appropriate responsive measures'" against the defendants

16  who threatened to place him in the hole.  Id.  Here, in contrast, Defendants have not

17  explained how a more detailed description of the injuries Plaintiff allegedly

18  suffered as a result of the shooting—all of which Nurse Lopez allegedly failed to

19  document and treat properly—would have helped prison officials take more

20  appropriate responsive measures.

21  　　　To the extent Defendants contend that Nurse Lopez's actions did not cause

22  Plaintiff any injury, that is a merits argument unrelated to the issue of whether he

23  administratively exhausted the claim.

24  　　　To the extent Defendants contend that this Court has "already found" that

25  failing to "accurately complete a form" does not state a claim for deliberate

26  indifference (Mot. at 17), Defendants are misconstruing an earlier dismissal of

27  Plaintiff's initial complaint (Dkt. 7).  The initial complaint alleged that Nurse Lopez

28  "poorly prepared" the CDCR 7219 medical report, failed to provide a "professional

18

level of health care," and took part in "covering up" the excessive force.  (Id. at 4.) The Court found that these allegations did not demonstrate that Nurse Lopez was "involved in the alleged use of excessive force or racial profiling" and did not "demonstrate a 'cover up.'"  (Id. at 4-5.)  The current iteration of Plaintiff's claim against Nurse Lopez is materially different because it alleges that Nurse Lopez herself was deliberately indifferent to his serious injuries.  (See Dkt. 88 at 4-5 [order granting Plaintiff leave to file the SAC and rejecting Defendants' argument that amendment would be futile].)

**C.     The Exhausted Claims are Timely.**

"Federal courts in § 1983 actions apply the state statute of limitations from personal-injury claims and borrow the state's tolling rules."  Soto v. Sweetman, 882 F.3d 865, 871 (9th Cir.), cert. denied, 139 S. Ct. 480 (2018).  In California, the applicable limitations period is 2 years.  See Cal. Code Civ. Proc. § 335.1; Canatella v. Van De Kamp, 486 F.3d 1128, 1132 (9th Cir. 2007).[7]  This time is tolled while the prisoner completes the administrative exhaustion process.  Brown v. Valoff, 422 F.3d 926, 943 (9th Cir. 2005).

The timeliness analysis turns on whether Plaintiff is entitled to equitable tolling for the time in which he was attempting to exhaust his administrative remedies.  It is undisputed that Plaintiff's claims accrued on the date of the incident, November 28, 2013, and that he filed the initial complaint in the present action in April 2016, approximately 2 years and 5 months later.  (See Dkt. 1.)  Plaintiff is entitled to approximately 10 months of equitable tolling for the time period between

---

[7] Although California law provides for statutory tolling based on the disability of imprisonment, Plaintiff is not entitled to this tolling because he is serving a life sentence without the possibility of parole.  (Shryock Dec. Ex. H [abstract of judgment].)  See Cal. Civ. Pro. Code § 352.1(a); Brooks v. Mercy Hospital, 1 Cal. App. 5th 1, 6-7 (2016).  Plaintiff has not argued that he is entitled to any type of tolling, other than equitable tolling while he attempted to administratively exhaust his claims.

the filing of the First CDCR 602 on December 25, 2013 and the third-level denial of this grievance on October 17, 2014.  (See Opp'n at 28.)  This is sufficient to render the exhausted claim—the deliberate indifference claim against Nurse Lopez—timely.

Notably, both parties assume that the relevant filing date for the timeliness analysis is that of the initial Complaint in April 2016, rather than that of the operative SAC approximately 2 years later.  (See Mot. at 18-19; Opp'n at 28.)  Although the initial Complaint included a claim against Nurse Lopez, this claim was different than the present claim, as discussed above.  Plaintiff voluntarily dismissed that claim after the Court found it insufficient on screening.  (See Dkt. 7, 8, 9.)  Plaintiff later moved to amend his pleading to include the present claim against Nurse Lopez, and the Court granted him leave to do so in April 2008.  (Dkt. 88.)  It appears that this later amendment would "relate back" to the filing of the initial Complaint because it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading…."  Fed. R. Civ. P. 15(c)(1)(B).  See John v. City of Portland, No. 04-1176, 2005 WL 600000 at *2 (D. Or. Mar. 15, 2005) (finding § 1983 claim against city related back to complaint that brought § 1983 claim against city officers and negligence claim against the city based on the same incident; noting that "Ninth Circuit has historically applied the relation-back doctrine with extreme liberality, permitting relation-back of new claims arising from the same 'conduct, transaction, or occurrence' as the claims in the original complaint, even when the new claims are based on a different legal theory of which there was no warning in the original pleading.").  Cf. Saunders v. Garay, No. 11-06322, 2014 U.S. Dist. LEXIS 124437 at *9-10, 2014 WL 4386727 at *3 n.5 (N.D. Cal. Sept. 4, 2014) (in a diversity case governed by California law, rejecting defendants' argument that relation-back was precluded because the defendant had previously been dismissed by the court, finding that the court's "determination that [the plaintiff] failed to state a claim

against [the defendant] is a circumstance wholly unlike a plaintiff deliberately dismissing a defendant from a lawsuit … or deliberately omitting a defendant from a complaint").

Regarding the failure-to-protect claim against CO Arnett, the Court finds it unnecessary to reach the issue of timeliness.  If Plaintiff were to exhaust this claim, or successfully argue that exhaustion should be excused, further briefing would be needed as to whether the claim is barred by the statute of limitations.

**D.**     **Summary Judgment Should Be Granted in Part and the Unexhausted Claims Dismissed without Prejudice.**

For the reasons discussed above, Plaintiff's SAC is "mixed," in that it presents some exhausted claims and some unexhausted claims.  The following claims are exhausted: (a) Plaintiff's excessive force claim against CO Arnett, per Defendants' admission; and (b) Plaintiff's deliberate indifference claim against Nurse Lopez.  The following claims are unexhausted: (a) Plaintiff's claim against Sergeant Romo, per Plaintiff's admission; and (b) Plaintiff's failure-to-protect claim against CO Arnett.

In Lira v. Herrera, 427 F. 3d 1164 (9th Cir. 2005), cert. denied, 549 U.S. 1204 (2007), the Ninth Circuit addressed what a district court should do with such a complaint.  Analogizing to the treatment of "mixed" habeas petitions in Rose v. Lundy, 455 U.S. 509 (1983), the Ninth Circuit held:

When a plaintiff has filed a "mixed" complaint and wishes to proceed with only the exhausted claims, a district court should simply dismiss the unexhausted claims when the unexhausted claims are not intertwined with the properly exhausted claims.  This is likely to be the ordinary case in PLRA suits, where plaintiffs often raise several unrelated claims in a single lawsuit. …

On the other hand, when a plaintiff's "mixed" complaint incudes exhausted and unexhausted claims that *are* closely related and

difficult to untangle, dismissal of the defective complaint with leave

to amend to allege only fully exhausted claims, is the proper

approach.

Id. at 1175-76.

Although the claims in the present case are closely related, they are not

difficult to untangle because they are against different Defendants and are each

based on distinct events that occurred on November 28, 2013.  For example,

Plaintiff's claim that CO Arnett failed to prevent the attack by Murillo is distinct

from his claim that CO Arnett used excessive force once the fight had begun.  Thus,

it is appropriate to dismiss the unexhausted claims and allow Plaintiff to proceed on

the exhausted claims.

## V.

## RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Court issue an

Order: (1) approving and accepting this Amended Report and Recommendation,

(2) granting summary judgment for CO Arnett on Plaintiff's failure-to-protect

claim, (3) granting summary judgment for Sergeant Romo based on Plaintiff's

admission that the claim against him is unexhausted, (4) dismissing these claims

against CO Arnett and Sergeant Romo without prejudice, and (5) denying

Defendants' motion for summary judgment in all other respects.

DATED:  April 23, 2019

_Karen E. Scott_

_____

KAREN E. SCOTT
United States Magistrate Judge

22