XAVIER BECERRA
Attorney General of California
MARISA Y. KIRSCHENBAUER
Supervising Deputy Attorney General
BRYAN KAO
Deputy Attorney General
CASSANDRA J. SHRYOCK
Deputy Attorney General
State Bar No. 300360
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 703-1680
  Fax:  (415) 703-5843
  E-mail:  Cassandra.Shryock@doj.ca.gov
*Attorneys for Defendants*
*G. Arnett and M. Lopez*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

CIVIL DIVISION

| | |
|---|---|
| **KEVIN SIMMONS,**<br><br>                              Plaintiff,<br><br>          **v.**<br><br>**G. ARNETT, et al.,**<br><br>                              Defendant. | 2:16-cv-02858 R-KES<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**<br><br>**Submitted Concurrently with [Proposed] Statement of Uncontroverted Facts and Conclusions of Law and [Proposed] Judgment**<br><br>Date:           November 18, 2019<br>Time:           9:00 a.m.<br>Courtroom:   880, 8th Floor<br>Judge:         The Late Hon. Manuel Real<br>Trial Date: 3/3/2020<br>Action Filed: 4/26/2016 |

**TO PLAINTIFF KEVIN SIMMONS, THROUGH HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on November 18, 2019 at 9:00 a.m. before the Late Honorable Manuel Real, United States District Judge, Defendants Arnett and Lopez move the Court for summary judgment under Federal Rule of Civil Procedure 56.[1]  This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on June 20, 2019.

The grounds for this motion are as follows: (1) Defendant Arnett did not use excessive force in violation of the Eighth Amendment; (2) Defendant Lopez was not deliberately indifferent to a serious risk of physical harm to Plaintiff; and (3) Defendants are entitled to qualified immunity.

This motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the [Proposed] Statement of Uncontroverted Facts and Conclusions of Law, supporting declarations and exhibits, the Court's files in this matter, and any other matter that the Court deems appropriate.

Dated:  September 20, 2019

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
MARISA Y. KIRSCHENBAUER
Supervising Deputy Attorney General
BRYAN KAO
Deputy Attorney General

*/s/ Cassandra J. Shryock*
CASSANDRA J. SHRYOCK
Deputy Attorney General
*Attorneys for Defendants Arnett and Lopez*

LA2016502475/21051604.docx

---

[1] Defendants sought to have this motion heard on October 21, 2019, but at the request of Plaintiff's counsel, Defendants have agreed to set a later date in November to accommodate their request to meet with their client to oppose the motion.

1

# TABLE OF CONTENTS

2

**Page**

3   Memorandum of Points and Authorities.................................................................1

4   Introduction ...........................................................................................................1

Summary of Undisputed Facts ..............................................................................1

5
     I.      Applicable Policies and Procedures. ....................................................2

6
     II.     Plaintiff's Altercation with Inmate Murrillo on November 28, 2013.......................................................................................................2

7

8
     III.    Defendant Lopez Evaluates Plaintiff and Refers Him for Further Medical Care..........................................................................................5

Standard of Review ...............................................................................................6

9
Argument ...............................................................................................................7

10
     I.      Defendant Lopez Is Entitled to Judgment as a Matter of Law Because Her Alleged Inaction Did Not Result in Any Delay in Treatment or Harm to Plaintiff. ...............................................................7

11

12
     II.     Defendant Arnett Is Entitled to Judgment as a Matter of Law Because He Did Not Use Force Maliciously and Sadistically But Instead to Restore Order. ...................................................................9

13

14
          A.     Legal Standard for Excessive-Force Claims.............................9

15
          B.     The Undisputed Evidence Demonstrates that Defendant Arnett Did Not Use Force Maliciously and Sadistically, But Instead to Restore Order....................................................10

16
     III.    Defendants Are Entitled to Qualified Immunity...............................12

17
          A.     Legal Standard for Qualified Immunity. .................................12

18
          B.     Defendant Lopez Is Entitled to Qualified Immunity Because It Would Not Have Been Clear to Hear That Referring Plaintiff for Emergency Medical Care Violated the Constitution...................................................................13

19

20
          C.     Defendant Arnett Is Entitled to Qualified Immunity Because It Was Not Clearly Established that His Alleged Conduct Violated the Law. ..................................................14

21

Conclusion...........................................................................................................15

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

Cases

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986)..................................................................6

*Berg v. Kincheloe*
    794 F.2d 457 (9th Cir. 1986)..................................................6

*Brown v. Lopez*
    No. 1:10-cv-00124 GSA PC, 2013 WL 6512833, *8-*9 (E.D. Cal.
    Dec. 12, 2013) ......................................................................11

*Browning v. Vernon*
    44 F.3d 818 (9th Cir. 1995)..................................................13

*Celotex Corporation v. Catrett*
    477 U.S. 317 (1986)................................................................6

*Davis v. Scherer*
    468, U.S. 183, 187 (1984).....................................................13

*Farmer v. Brennan*
    511 U.S. 825, 834 (1994).......................................................9

*Fleming v. LeFevere*
    423 F. Supp. 2d 1064 (C.D. Cal. 2006)..................................7

*Hamby v. Hammond*
    821 F.3d 1085 (9th Cir. 2016)..............................................13

*Harlow v. Fitzgerald*
    457 U.S. 800 (1982)..............................................................12

*Hudson v. McMillian*
    503 U.S. 1 (1992)....................................................................9

*Jeffers v. Gomez*
    267 F.3d 895 (9th Cir. 2001)................................................14

*Marquez v. Gutierrez*
    322 U.S. 689, 693 (9th Cir. 2003)........................................14

1
2

# TABLE OF AUTHORITIES
## (continued)

Page

*McGuckin v. Smith*
  974 F.2d 1050 (9th Cir. 1992)...................................................................7

*Meredith v. Arizona*
  523 F.2d 481 (9th Cir. 1975).....................................................................9

*Mullinex v. Luna*
  577 U.S. __ (2015) (per curiam) ............................................................12

*Pearson v. Callahan*
  555 U.S. 223 (2009)................................................................................12

*Petty v. Bradbury*
  No. 16-1978 SK (PR), 2017 WL 11049960, at *3-*4 (N. D. Cal.
  Jan. 31, 2017)..........................................................................................15

*Saucier v. Katz*
  533 U.S. 194 (2001)................................................................... 12, 13, 14

*Scott v. Harris*
  550 U.S. 372 (2007)..................................................................................6

*Triton Energy Corp. v. Square D Co.*
  68 F.3d 1216 (9th Cir. 1995).....................................................................6

*Whitley v. Albers*
  475 U.S. 312 (1986)............................................................................9, 10

**CONSTITUTIONAL PROVISIONS**

United States Constitution
  Eighth Amendment ......................................................................1, 8, 9, 15

**COURT RULES**

Federal Rules of Civil Procedure
  Rule 56 .......................................................................................................6

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES
## (continued)

**Page**

**OTHER AUTHORITIES**

California Code of Regulations Title 15
   § 3286 (2013)...................................................................................................2

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff Kevin Simmons, a state prison inmate, is suing two California Department of Corrections and Rehabilitation (CDCR) staff members after an officer intervened to stop a fight Plaintiff was involved in and a nurse evaluated and referred Plaintiff for immediate medical care to treat his lower-extremity injuries sustained during the fight.  Plaintiff claims that the officer who intervened violated the Eighth Amendment because the force used (40mm sponge rounds) should have been directed to the other inmate, as Plaintiff was the victim of the fight.  But the undisputed evidence demonstrates that Defendant Arnett did not use force maliciously and sadistically; instead, he only used force to restore institutional order.  Plaintiff also claims that the nurse who evaluated him violated the Eighth Amendment because she failed to document his injuries and improperly documented how the fight occurred before referring Plaintiff for further medical care.  But the undisputed evidence demonstrates that Defendant Lopez immediately referred Plaintiff to receive emergency medical care, and therefore any alleged "inaction" by her did not result in any harm to Plaintiff.  Finally, Defendants are entitled to qualified immunity because it would not have been clear to them at the time of the incident that they were violating clearly established law.  Accordingly, Defendants are entitled to judgment as a matter of law.

## SUMMARY OF UNDISPUTED FACTS

Plaintiff Kevin Simmons is a California state prison inmate, who is, and was at all relevant time, incarcerated at California State Prison, Los Angeles County ("LAC").  (Def.'s Proposed Statement of Undisputed Facts (SUF) ¶ 1.)  Defendant Arnett is employed as a correctional officer by the California Department of Corrections and Rehabilitation (CDCR), and was assigned to LAC on November 28, 2013.  (SUF ¶ 2.)  Defendant Lopez is, and was at all relevant times, also a

Licensed Vocational Nurse at LAC.  (SUF ¶ 3.)  In this action, Plaintiff contends that Defendant Arnett used excessive force on Plaintiff while Plaintiff was involved in a physical altercation with another inmate, causing Plaintiff to break his leg.  (SUF ¶ 4.)  Plaintiff also contends that Defendant Lopez was deliberately indifferent to his serious medical needs when she did not accurately complete a CDCR form, and failing to treat his "gunshot" wounds.  (SUF ¶ 5.)

## I.   APPLICABLE POLICIES AND PROCEDURES.

CDCR's use-of-force policy provides that officers should use whichever force option he or she reasonably believes is sufficient to subdue an attacker, overcome resistance, or effect custody.  (SUF ¶ 6.)  When using a 40mm to intervene in a fight between inmates, correctional staff are instructed to shoot at "Zone 1," which is anywhere below the inmate's waist, excluding the groin area.  (SUF ¶ 7.)  If there is a fight between inmates, the employees who observe the fight will prepare a written report (CDCR Form 837) regarding the incident.  Cal. Code Regs. Tit. 15, § 3286 (2013); (SUF ¶ 9.)

If there is a fight between inmates, medical staff will also evaluate the inmates who were involved.  (SUF ¶ 10.)  Medical staff will ask each inmate to discuss the circumstances of any injuries the inmate may have sustained and will document the inmate's statements, as well as any observed injuries, on a CDCR Form 7219, Medical Report of Injury or Unusual Occurrence.  (SUF ¶ 10.)  The completed CDCR Form 7219 is then delivered to appropriate correctional staff to include as part of the written report regarding the incident.  (SUF ¶ 11.)  The form is not incorporated into the inmate's medical records.  (SUF ¶ 11.)

## II.   PLAINTIFF'S ALTERCATION WITH INMATE MURRILLO ON NOVEMBER 28, 2013.

On the morning of November 28, 2013, Plaintiff was permitted to enter Facility C, Building 4, at California State Prison, Los Angeles County in order to perform his duties as a barber.  (SUF ¶ 15.)  Defendant Arnett, who was stationed

in the control booth of the building, was the only officer in the building.  (SUF ¶ 14.)  The control booth is an elevated position within the building with views of the dayroom and inmates' cells within the building.  (SUF ¶ 12.)  The officer stationed in the control booth is provided two force options—a 40mm launcher that shoots sponge rounds, and a mini 14 rifle that shoots live rounds.  (SUF ¶ 13.)  The control booth officer cannot leave the control booth for any reason unless he is relieved by another officer.  (SUF ¶ 13.)

When Plaintiff arrived in the building, there were a number of inmates out of their cells.  (SUF ¶ 16.)  Plaintiff walked up the stairs to the upper tier of the building.  (SUF ¶ 16.)  While Plaintiff was on the upper tier, Inmate Murrillo walked up to him and, after a brief verbal exchange, abruptly punched Plaintiff in the head.  (SUF ¶ 17.)  Plaintiff immediately put his hands up and grabbed his head.  (SUF ¶ 18.)  When Defendant Arnett saw what he perceived as two inmates fighting, he notified Central Control that there were two inmates fighting, activated his personal alarm, and ordered both inmates to get down and stop fighting.  (SUF ¶ 19.)  Plaintiff was "very dazed" from the punch and did not hear Arnett activate the building alarm or the order to stop fighting.  (SUF ¶ 20.)

Because the inmates did not stop fighting and get down on the ground after he ordered them to do so, Defendant Arnett loaded the 40mm launcher with one Direct Exact Impact Sponge Round, aimed at Plaintiff's lower extremities, and discharged one round.  (SUF ¶ 21.)  Defendant Arnett could not tell whether the round made contact.  (SUF ¶ 21)  Plaintiff heard a "pow" sound and then his knees buckled.  (SUF ¶ 22.)  This first shot hit allegedly hit Plaintiff in the left shin.  (SUF ¶ 22.)  As his knees buckled, Plaintiff reached out for the railing along the upper-tier, but before he could grab the rail, Inmate Murrillo grabbed him and spun Plaintiff around.  (SUF ¶ 23.)  Plaintiff ended up on his knees, with his back to the railing (and Defendant Arnett), while Inmate Murrillo was directly in front of Plaintiff, facing him.  (SUF ¶ 23.)  Plaintiff wrapped his arms around Inmate Murrillo's

1   waist, and buried his face in Inmate Murrillo's stomach area.  (SUF ¶ 24.)  Inmate

2   Murrillo continued to punch Plaintiff in the head, neck, and back area.  (SUF ¶ 24.)

3       Defendant Arnett gave a second order to Plaintiff and Inmate Murrillo to stop

4   fighting and get down, but the inmates continued to fight.  (SUF ¶ 25.)  Plaintiff

5   claims he did not hear Defendant Arnett's order.  (SUF ¶ 25.)  Because Defendant

6   Arnett perceived that the fight was on-going, he reloaded the 40mm launcher with

7   one Direct Exact Impact Sponge Round, aimed at Plaintiff's lower extremities, and

8   discharged another round.  (SUF ¶ 26.)  Defendant Arnett could not tell whether the

9   round made contact.  (SUF ¶ 27.)  This second shot purportedly hit Plaintiff's left

10  thigh.  (SUF ¶ 27.)

11      Plaintiff kept his arms wrapped around Murrillo's waist but his hold got

12  steadily lower as Murrillo continued to punch him.  (SUF ¶ 28.)  When Plaintiff

13  was holding on to Inmate Murrillo's legs "towards his ankles," he felt the third shot

14  hit his right buttocks.  (SUF ¶ 28.)  When he fired the third shot, Defendant Arnett

15  perceived that the fight between Plaintiff and Inmate Murrillo was still on-going.

16  (SUF ¶ 29.)  After the third shot was fired, correctional staff entered the building

17  and both inmates laid down on the ground, and no further shots were fired.  (SUF ¶

18  30.)  The whole altercation lasted about 30 to 45 seconds.  (SUF ¶ 31.)

19      Defendant Arnett fired each shot from about approximately 30-50 feet away.

20  (SUF ¶ 32.)  Each time Defendant Arnett fired a sponge round, he believed his only

21  "Zone 1" shot was at Plaintiff.  (SUF ¶ 34.)  And Defendant Arnett believed that

22  aiming anywhere other than Plaintiff's lower extremities could cause serious injury

23  or death to either Plaintiff or Inmate Murrillo.  (SUF ¶ 34.)  It was not until after the

24  fight was over and Plaintiff was being carried out of the building that Defendant

25  Arnett saw that Plaintiff was injured.  (SUF ¶ 33.)

26

27

28

### III. DEFENDANT LOPEZ EVALUATES PLAINTIFF AND REFERS HIM FOR FURTHER MEDICAL CARE.

Defendant Lopez responded to the incident around 10:10 a.m., and evaluated Plaintiff about five minutes later. (SUF ¶ 35.)  Plaintiff claims that he refused to answer Defendant Lopez's questions as she prepared the CDCR Form 7219, but a correctional sergeant told Defendant Lopez to document that Plaintiff had slipped in water. (SUF ¶ 36.)  Defendant Lopez crossed out the "No Comment" statement that she initially wrote and then wrote that Plaintiff "hurt my leg when I slipped in water." (SUF ¶ 37.)  Defendant Lopez also indicated on the form that Plaintiff had pain in his lower left leg, but did not record any other injuries on the form. (SUF ¶ 38.)

After completing the CDCR Form 7219, at about 10:20 a.m., Defendant Lopez referred Plaintiff to the prison's emergency room, known as the Triage and Treatment Area (TTA). (SUF ¶ 39.)  A CDCR Form 7219 is not transmitted to the TTA with an inmate-patient. (SUF ¶ 40.)  Once Plaintiff arrived in the prison's emergency room, he was evaluated around 10:34 a.m. by a licensed vocational nurse and a doctor. (SUF ¶ 41.)  Medical personnel in the TTA gave Plaintiff pain medication, stabilized his left leg, and arranged for him to be transported to an outside hospital, Palmdale Regional Medical Center. (SUF ¶ 42.)

At approximately 12:00 p.m., Plaintiff was transported to Palmdale Regional Medical Center, an outside hospital. (SUF ¶ 43.)  There, Plaintiff was diagnosed with a fractured left tibia and fibula, which was surgically repaired the next day. (SUF ¶ 43.)  Plaintiff's right thigh and buttocks wounds were also treated at Palmdale Regional Medical Center. (SUF ¶ 44.)  Plaintiff was discharged on December 1, 2013. (SUF ¶ 45.)

Upon his return to prison, Plaintiff was provided housing accommodations (ground-floor cell and bottom-bunk), medical equipment (wheelchair, crutches, mobility vest), and job restrictions. (SUF ¶ 46.)  Plaintiff also received pain

1   medication and physical therapy.  (SUF ¶ 46.)  Lopez was not involved in

2   Plaintiff's medical care while in the TTA or at Palmdale Regional Medical Center.

3   (SUF ¶ 47.)

4                               **STANDARD OF REVIEW**

5        Federal Rule of Civil Procedure 56 provides that a summary-judgment motion

6   shall be granted when there is no genuine issue as to any material fact, and if the

7   moving party is entitled to judgment as a matter of law.  In *Celotex Corporation v.*

8   *Catrett*, 477 U.S. 317, 322-23 (1986), the Supreme Court held that Rule 56(c)

9   mandates the entry of summary judgment against a party who fails to make a

10  showing sufficient to establish the existence of an element essential to the party's

11  case, and on which that party will bear the burden of proof at trial.  The

12  non-moving party's failure of proof on an essential element of its claim renders all

13  other facts immaterial.  *Id.*

14       To prevent entry of summary judgment, Plaintiff must present competent

15  evidence showing that there are genuine issues of material fact regarding whether

16  Defendants violated his rights.  *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir.

17  1986).  Plaintiff cannot rest solely on conclusory allegations (*id.*), but must present

18  "specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at

19  323-24.  A fact is material only if it affects the outcome of the case under applicable

20  substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

21  Summary judgment may be granted if the non-moving party's evidence is merely

22  colorable or is not significantly probative.  *Id.* at 250-51.  "The mere existence of a

23  scintilla of evidence in support of the non-moving party's position is not

24  sufficient."  *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir.

25  1995).  Additionally, if the non-moving party's version of facts is "blatantly

26  contradicted by the record, so that no reasonable jury could believe it, a court

27  should not adopt that version of the facts for purposes of ruling on a motion for

28  summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## ARGUMENT

I.   **DEFENDANT LOPEZ IS ENTITLED TO JUDGMENT AS A MATTER OF LAW BECAUSE HER ALLEGED INACTION DID NOT RESULT IN ANY DELAY IN TREATMENT OR HARM TO PLAINTIFF.**

Because the undisputed facts demonstrate that Defendant Lopez's alleged conduct did not result in any delay in treatment or any harm to Plaintiff, she is entitled to judgment as a matter of law.

To meet the requirements of a deliberate-indifference claim, Plaintiff must show that Defendant Lopez committed a purposeful act or failed to respond to pain or possible harm, which then actually resulted in harm, not mere delay. *McGuckin v. Smith,* 974 F.2d 1050, 1060 (9th Cir. 1992) (overruled on other grounds by *WMX Techs., Inc. v. Miller,* 104 F.3d 1133, 1136 (9th Cir. 1997)).  "[I]ndifference to the inmate's medical needs must be purposeful and substantial; negligence, inadvertence, or differences in medical judgment or opinion do not rise to the level of a constitutional violation." *Fleming v. LeFevere,* 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) (citing *Jackson v. McIntosh,* 90 F.3d 330, 332 (9th Cir. 1996)). "Deliberate indifference involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin*, 974 F.2d at 1059 (citing *Hudson v. McMillian*, 503 U.S. 1, 1000 (1992)).

Plaintiff's deliberate-indifference claim appears to be premised on the allegations that Defendant Lopez: (1) should have identified on the Form 7219 that his left leg was broken instead of marking that he experienced left-leg pain, (2) failed to identify on the Form 7219 that Plaintiff was shot in the right thigh and buttocks, and (3) wrote that Plaintiff "slipped in water" to cover up the allegedly excessive use of force by Defendant Arnett.  (ECF No. 94 at 6-10.)  But even if Defendant Lopez did not properly document Plaintiff's injuries,[2] or the

---

[2] Defendant Lopez is not a physician and cannot make medical diagnoses, such as "broken bone."  (Lopez Depo. at 64:24-69:4.)

circumstances causing the injury, the evidence demonstrates no violation of the Eighth Amendment occurred because there was no delay in Plaintiff receiving care, and he suffered no harm as a result of her alleged conduct.

Defendant Lopez evaluated Plaintiff at approximately 10:15 a.m., and within approximately five minutes of her evaluation, she contacted the prison's emergency room to have Plaintiff transported there for emergency medical care.  (SUF ¶¶ 34-38.)  He arrived in the prison's ER at approximately 10:34 a.m.  (SUF ¶ 40.)  The CDCR Form 7219, with the purported inaccuracies, was not transmitted with Plaintiff.  (*See* SUF ¶ 39.)  And, significantly, Defendant Lopez was not involved in Plaintiff's care after he was transferred to the prison's ER.  (SUF ¶ 46.)

Medical staff in the prison's ER completed their own evaluation of Plaintiff, including of both of his lower extremities.  (SUF ¶ 41; *see also* Holman Decl. ¶ 6.)  After their own evaluation, medical personnel gave Plaintiff pain medication, stabilized his left leg, and arranged for him to be transported to Palmdale Regional Medical Center, where he arrived at around 12:00 p.m.  (SUF ¶ 41.)  Plaintiff was also immediately evaluated there, and the following day his left leg was surgically repaired.  (SUF ¶ 42.)  The wounds to Plaintiff's thigh and buttocks wounds were also treated at Palmdale Regional Medical Center.  (SUF ¶ 43.)  And, after Plaintiff returned to prison, he received housing and medical accommodations, pain medication, physical therapy, and job restrictions.  (SUF ¶ 45.)

There is no evidence that Defendant Lopez's alleged inaction, or failure to accurately complete a custody form, delayed Plaintiff's treatment or caused him any harm.  Defendant Lopez is the one who arranged for Plaintiff to receive emergency medical care in the first place.  And she had no further involvement in his treatment once he transferred to the prison's ER.  Accordingly, Defendant Lopez is entitled to judgment as a matter of law.

**II.  DEFENDANT ARNETT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW BECAUSE HE DID NOT USE FORCE MALICIOUSLY AND SADISTICALLY BUT INSTEAD TO RESTORE ORDER.**

Defendant Arnett used the minimal force available to him, and only used force while the physical fight between Inmate Murrillo and Plaintiff was on-going. Because he did not use force maliciously and sadistically, but instead to restore institutional security, Defendant Arnett is also entitled to judgment as a matter of law.

**A.  Legal Standard for Excessive-Force Claims.**

The use of excessive force by prison official violates the Eighth Amendment. *Hudson v. McMillan*, 503 U.S. 1, 6-7 (1992).  However, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Meredith v. Arizona*, 523 F.2d 481, 483 (9th Cir. 1975).  *De minimis* uses of physical force do not fall under the umbrella of Eighth Amendment protection.  *Whitley v. Albers*, 475 U.S. 312, 327 (1986) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

The relevant inquiry for determining whether prison officials used excessive physical force in violation of the Eighth Amendment is whether force was applied in a good-faith effort to maintain or restore discipline, or, instead, was applied maliciously and sadistically for the very purpose of causing harm.  *Hudson*, 503 U.S. at 6-7 (citing *Whitley*, 475 U.S. at 312).  Factors considered in this inquiry include: the necessity of the force used, the relationship between the necessity and the amount of force used, the threat reasonably perceived by the responsible officials, any efforts made to temper the severity of a forceful response, and the extent of the injury inflicted.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Whitley*, 475 U.S. at 321.

When, like here, the "ever-present potential for violent confrontation and conflagration ripens into *actual* unrest and conflict, the admonition that a prison's internal security is peculiarly a matter normally left to the discretion of prison

administrators carries special weight." *Whitley*, 475 U.S. at 321 (internal citations omitted) (emphasis in original). In these circumstances, prison officials should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. *Id.* at 321-22. While this deference "does not insulate from review actions taken in bad faith and for no legitimate purpose," it does require that "neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice." *Id.* at 322. When analyzing whether evidence exists to support an excessive-force claim, the "court must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain . . . the case should not go to the jury." *Id.*

### B. The Undisputed Evidence Demonstrates that Defendant Arnett Did Not Use Force Maliciously and Sadistically, But Instead to Restore Order.

The undisputed evidence demonstrates that Defendant Arnett used the less severe of the two force options available to him to stop a serious physical fight. And he only used force while the fight was on-going. He is, therefore, entitled to judgment as a matter of law.

Plaintiff's excessive-force claim is essentially that Defendant Arnett should have shot at Inmate Murrillo because he was the aggressor in the fight. But even if Plaintiff's account of the altercation was true, Defendant Arnett reasonably perceived that there was a mutual fight occurring. Plaintiff admits that when he felt the first shot make contact, Inmate Murrillo had just punched him in the head and Plaintiff had his hands up towards his head. (SUF ¶¶ 17-18.) From where Defendant Arnett was positioned—30 to 50 feet away—he reasonably perceived both inmates were fighting. (SUF ¶ 19.) Then, for the remainder of the fight,

Plaintiff claims he had his arms wrapped around Inmate Murrillo and his head buried in Murrillo's stomach while Murrillo continued to punch him.  (SUF ¶¶ 23, 24, 27.)  Again, from Arnett's perspective, both inmates appeared to be fighting, and there was a serious risk of harm to both inmates each time he fired a sponge round.  (SUF ¶¶ 26, 29.)  And it is undisputed that when the inmates got on the ground and stopped fighting, Defendant Arnett stopped using force.  (SUF ¶ 30.)

Further, Defendant Arnett used the lesser of the two force options available to him.  (*See* SUF ¶ 13.)  Instead of shooting live rounds, he elected to shoot sponge rounds at the inmates.  (SUF ¶¶ 13, 21, 26, 29.)  And when shooting sponge rounds, Defendant Arnett was trained to shoot only at "Zone 1," which is below the waist excluding the groin area.  (SUF ¶ 7.)  Each time Defendant Arnett fired, he believed his only "Zone 1" shot was at Plaintiff.  (SUF ¶ 34.)  Even by Plaintiff's own account, for at least the second two shots, Defendant Arnett did not have any "Zone 1" shot of Inmate Murrillo, because Plaintiff was physically in front of Murrillo's legs.  (*See* SUF ¶¶ 23-24, 28.)  Based on Plaintiff's and Inmate Murrillo's positions during the fight, Defendant Arnett believed that aiming anywhere other than Plaintiff's lower extremities could cause serious injury or death to either inmate.  (SUF ¶ 34.)

Defendant Arnett also sought to avoid the use of force in the first place by verbally ordering the inmates to stop fighting.  (SUF ¶¶ 19, 25.)  Plaintiff's allegation that he did not hear such instructions is insufficient to create a triable issue of material fact.  *See Brown v. Lopez*, No. 1:10-cv-00124 GSA PC, 2013 WL 6512833, *8-*9 (E.D. Cal. Dec. 12, 2013) (concluding inmate-plaintiff's subjective impressions that he heard no alarm and did not see prison staff respond to his assault were insufficient to defeat summary judgment).

The situation Defendant Arnett was confronted with was violent, and he was forced to act immediately.  There were no other officers in the building, and Defendant Arnett could not leave his position in the control booth.  (SUF ¶¶ 12-13.)

Faced with two force options, he chose the lesser of the two, and aimed and shot at Plaintiff's lower extremities because that was the area he was trained to shoot at. (*See* SUF ¶ 13, 21, 26, 29.)  And he believed aiming anywhere else could cause serious injury or death to either of the inmates.  (SUF ¶ 34.)  As soon as the inmates got down and stopped fighting, Defendant Arnett stopped using force.  (SUF ¶ 30.) There is simply no evidence to suggest that Defendant Arnett's actions were motivated by animus towards Plaintiff.

This case should not go to a jury, because the undisputed evidence does not support an inference of "wantonness in the inflection of pain," even when viewed in the light most favorable to Plaintiff.  Therefore, Defendant Arnett is entitled to judgment as a matter of law.

## III. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

### A. Legal Standard for Qualified Immunity.

Qualified immunity shields state officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The initial inquiry for qualified immunity is whether a constitutional right would have been violated on the facts established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If no constitutional right was violated under the alleged facts, the inquiry ends and defendants prevail.  *Id.* at 204.  If, however, "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established."  *Id.* at 201-02.  Courts may consider these two questions in either order, and a favorable determination for the defendant on either establishes qualified immunity.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"A clearly established right is one that is sufficiently clear that *every* reasonable official would have understood that what he is doing violates that right." *Mullinex v. Luna*, 577 U.S. __, 136 S. Ct. 305, 308 (2015) (per curiam) (internal

1   quotations omitted) (emphasis added); *see also Hamby v. Hammond*, 821 F.3d

2   1085, 1090-91 (9th Cir. 2016).  While a case directly on point is not required,

3   "existing precedent must have placed the statutory or constitutional question

4   beyond debate." *Id.* (*citing Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

5   Qualified immunity permits reasonable mistakes as to what the law requires.

6   *Saucier*, 533 U.S. at 205.  Moreover, a plaintiff bears the burden of establishing that

7   defendants violated a clearly established right.  *Davis v. Scherer*, 468, U.S. 183,

8   187 (1984); *Browning v. Vernon*, 44 F.3d 818, 822 (9th Cir. 1995).

9         **B.**   **Defendant Lopez Is Entitled to Qualified Immunity Because It**

10             **Would Not Have Been Clear to Hear That Referring Plaintiff for Emergency Medical Care Violated the Constitution.**

11        As a preliminary matter, Defendant Lopez is entitled to qualified immunity

12  under the first prong of the *Saucier* analysis because, as set out above, the

13  undisputed evidence demonstrates that she was not deliberately indifferent to

14  Plaintiff's serious medical needs.  She is also entitled to qualified immunity under

15  the second prong of the *Saucier* analysis because it would not have been clear to

16  Defendant Lopez, or any other reasonable official, that inaccurately completing a

17  form, while still referring an inmate-patient to the prison emergency room,

18  amounted to deliberate indifference.  Defendant Lopez arranged for Plaintiff to be

19  transported to the prison's emergency room within five minutes of evaluating him,

20  and there, his left leg was stabilized and he was given pain medication.  And the

21  CDCR Form 7219 that Plaintiff complains of was not relied on in determining

22  Plaintiff's course of medical care.  Defendant Lopez was not involved in Plaintiff's

23  medical care after he was transported to the prison's ER.  Defendants are not aware

24  of any case that holds such conduct constitutes deliberate indifference.  Because

25  Defendant Lopez was not on notice that her conduct was clearly unlawful, she is

26  entitled to qualified immunity.

27

28

### C. Defendant Arnett Is Entitled to Qualified Immunity Because It Was Not Clearly Established that His Alleged Conduct Violated the Law.

Defendant Arnett is similarly entitled to qualified immunity under the first prong of the *Saucier* analysis because the undisputed evidence does not give rise to an inference that he maliciously and sadistically used force on Plaintiff.  But even if the Court were to find that Plaintiff's claims would state a constitutional violation if proven, Defendant Arnett is still entitled to qualified immunity under the second prong of the *Saucier* analysis.  *See Marquez v. Gutierrez*, 322 F.3d 689, 693 (9th Cir. 2003) (holding that a claim for qualified immunity is not defeated simply because a triable issue of fact exists as to whether decision to shoot prisoner was malicious).

It is clearly established "that a prison guard is permitted to use deadly force 'in a good faith effort to maintain or restore discipline.'"  *Jeffers v. Gomez*, 267 F.3d 895, 912 (9th Cir. 2001) (citing *Whitley*) (finding prison officials were entitled to qualified immunity where inmate-plaintiff was shot while being attacked by an inmate with a knife-like weapon, because the fact that the bullet struck the plaintiff rather than his attacked amounted to "negligence or recklessness, at most").  Given this standard, it would not have been clear to a reasonable officer that firing a less-lethal sponge round at Plaintiff's lower extremities, while Plaintiff had his arms wrapped around another inmate that was punching him, would violate the Constitution.  Indeed, a reasonable official could perceive, as Defendant Arnett did, that the inmates were engaged in a fight and both were in imminent danger of suffering serious injury and that firing the less-lethal round was consistent with, or even required by, prison officials' Constitutional obligations to protect inmates from attacks by other inmates.  *See Jeffers*, 267 F.3d at 917-18 (recognizing the difficult balance in prison officials' duty to protect employees, visitors, and the inmates themselves).

And in cases similar to the case at bar, court have concluded that officers are entitled to qualified immunity.  For example, in *Petty v. Bradbury*, the inmate-plaintiff was involved in a fight with another inmate in the prison dining hall and brought suit after being shot in the neck by a defendant-correctional officer, who fired a 40mm sponge round at the inmate fight from his control booth position.  No. 16-1978 SK (PR), 2017 WL 11049960, at *3-*4 (N. D. Cal. Jan. 31, 2017).  There the court concluded there was no Eighth Amendment violation, and the officer was entitled to qualified immunity because a "reasonable correctional official could have believed that firing a "less-lethal" round at two closely positioned inmates in order to stop an attack that could have seriously injured or killed one of the inmates was a good-faith effort to restore order." *Id.* at *4.  Defendant Arnett similarly shot at two closely positioned inmates with "less lethal" sponge rounds, in an attempt to restore order.  Accordingly, it was not clearly established at the time of the incident –November 28, 2013—that Defendant Arnett's conduct violated the Eighth Amendment.  He is therefore entitled to qualified immunity.

## CONCLUSION

Because the undisputed evidence demonstrates that Defendant Arnett did not use force maliciously and sadistically, and Defendant Lopez was not deliberately indifferent to a serious medical need, they are entitled to judgment as a matter of law.  They are also both entitled to qualified immunity.

Dated:  September 20, 2019

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
MARISA Y. KIRSCHENBAUER
Supervising Deputy Attorney General

*/s/ Cassandra J. Shryock*
CASSANDRA J. SHRYOCK
Deputy Attorney General
*Attorneys for Defendants*
*G. Arnett and M. Lopez*

LA2016502475/21051604.docx

# CERTIFICATE OF SERVICE

Case Name:   ***Simmons, Kevin v. G. Arnett, et al.***      Case No.   **2:16-cv-02858 R (KESx)**

I hereby certify that on September 20, 2019, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

- **DEFENDANT'S PROPOSED STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

- **DECLARATION OF I. HOLMAN IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT with Exhibit A**

- **DECLARATION OF M. LOPEZ IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT with Exhibits B and C**

- **DECLARATION OF DEFENDANT G. ARNETT IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

- **DECLARATION OF DEPUTY ATTORNEY GENERAL BRYAN KAO IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT with Exhibits D to J**

- **[PROPOSED] JUDGMENT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on September 20, 2019, at San Francisco, California.


| B. Chung | /s/ B. Chung |
|:---:|:---:|
| Declarant | Signature |

LA2016502475 /21640303.docx